United States District Court
Southern District of Texas

**ENTERED**

June 12, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| ETHAR MOHAMMED ALI ALHASSAN, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:26-cv-00461 |
| | § | |
| ORLANDO PEREZ, *et al.*, | § | |
| Respondents. | § | |

## ORDER

Before the Court is Petitioner's Emergency Application for a Temporary Restraining Order and Preliminary Injunction, (Dkt. No. 15). Generally, Petitioner seeks to prevent Respondents from removing her to a third country that was not identified in her removal proceedings, unless and until the Government provides her with adequate notice under the Due Process Clause and a meaningful opportunity to seek fear-based protections as to the identified country of removal. (Dkt. No. 15 at 1–2).[1]

At its core, this case is about due process. Petitioner, a native of Sudan, cannot be returned to her home country because she has established in Immigration Court that she will likely face persecution if she returns. Although Petitioner may not be removed to Sudan, Respondents filed a notice of their plans to remove her to Cameroon on five days' notice.[2] Faced with the prospect of removal to this recently disclosed third country, Petitioner fears not only what may await her in Cameroon, but whether that country may ultimately return her to the very country from which she fled.

Now, after seventeen months in immigration detention, Petitioner comes before the Court, not to challenge her removability, but to uphold rights fundamental to due process: notice and an opportunity to be heard before being sent to a country where she fears she may again face persecution, torture, or refoulement. This case does not consider whether Respondents may remove Petitioner from the United States. Nor does it call into

---

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

[2] This five-day notice was required by the Court's Order, (Dkt. No. 8).

question the validity of her removal order. Instead, the question before the Court is whether due process entitles Petitioner to adequate notice of the proposed country of removal and a meaningful opportunity to raise fear-based claims before she is removed. The Court finds that it does.

For the reasons stated below, Petitioner's request to convert the existing temporary restraining order into a preliminary injunction, (Dkt. No. 15), is **GRANTED.** Respondents are **ENJOINED AND RESTRAINED, pending further order of the Court,** from removing Petitioner, unless and until Respondents provide Petitioner with at least ten (10) days' notice of the proposed country of removal, and Respondents provide Petitioner with a meaningful opportunity to seek fear-based protections as to the identified countries of removal.

## I.   BACKGROUND

### A. Petitioner's Immigration History

Petitioner is a native and citizen of Sudan. She entered the country without inspection near Otay Mesa, California. (Dkt. No. 10 at 2). She was encountered by immigration officials near Jamul, California, on or about January 19, 2025, and she was apprehended and placed in expedited removal proceedings under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Dkt. No. 10-2 at 2). She was served with a Notice to Appear on or about February 25, 2025, and charged with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and (a)(6)(A)(i) for being present in the United States without being admitted or paroled and for not having valid entry documents. (Dkt. No. 10-2 at 2). Petitioner has been detained in federal immigration custody since she was apprehended on January 19, 2025. (*Id.* at 1; Dkt. No. 15-2 at 15).

At the final hearing of her removal proceedings on August 25, 2025, Petitioner was ordered removed to Sudan and simultaneously granted Withholding of Removal under INA Section 241(b)(3).[3] (Dkt. No. 1 at 14; Dkt. No. 1-2 at 2; Dkt. No. 10-2 at 2). Her application for asylum was denied. (Dkt. No. 1-1 at 2). Both parties reserved appeal of

---

[3] Withholding of removal under the INA prevents the Government from removing a noncitizen to a country where it is more likely than not that the individual would face persecution on account of a protected ground. 8 U.S.C. § 1231(b)(3)(A). As such, though the Immigration Judge entered a final order of removal against Petitioner to Sudan, the simultaneous grant of withholding of removal relief barred Respondents from removing Petitioner to Sudan because the Immigration Judge found that Petitioner demonstrated that she would more likely than not face persecution there.

2 / 22

the decision, however, neither party filed an appeal. (Dkt. No. 1-1 at 5; Dkt. No. 1 at 14). As such, the order of removal became final on September 24, 2025, thirty days after the removal order was issued. *See* 8 C.F.R. § 1241.1(c). No countries other than Sudan were designated for removal during her proceedings. (*See* Dkt. No. 1-1).

Petitioner filed a petition for a writ of habeas corpus on March 23, 2026, approximately six months after her order of removal became final. (Dkt. No. 1). She asserts that her continued detention violates the Immigration and Nationality Act (INA) and the Due Process Clause of the Fifth Amendment. She also claims that her removal to an undisclosed third country would violate the Due Process Clause and the INA.

On May 15, 2026, while the petition was pending, Respondents filed an advisory stating that Immigration and Customs Enforcement, Enforcement and Removal Operations (ICE ERO) intended to remove Petitioner from the United States. (Dkt. No. 12 at 1). Respondents did not provide a date or country of removal initially. (*Id.*). On May 18, 2026, Respondents clarified that ICE ERO intended to remove Petitioner to Cameroon on May 26, 2026, absent any stay or temporary restraining order. (Dkt. No. 16 at 2).

On May 18, 2026, Petitioner filed an Emergency Application for a Temporary Restraining Order and Preliminary Injunction, (Dkt. No. 15). Petitioner argued that removal to a third country would violate her due process rights because Respondents have not provided sufficient notice of the proposed country of removal nor an opportunity to seek fear-based protection from that country. (Dkt. No. 15-2 at 21). As such, Petitioner seeks emergency relief to enjoin her imminent transfer and removal. The Court ordered Petitioner to clarify her requested relief after Respondents identified Cameroon as the country of removal. (Dkt. No. 17). Petitioner clarified that "she seeks a temporary restraining order and preliminary injunction prohibiting Respondents from removing her to Cameroon—or to any other third country later identified by Respondents—unless and until Respondents provide the constitutionally-required notice and a meaningful opportunity to contest removal based on a fear of persecution or torture in that country through reopened removal proceedings before an Immigration Judge." (Dkt. No. 18 at 2).

Respondents filed a timely response to Petitioner's Application. (Dkt. No. 23). First, Respondents argue that the Court is stripped of jurisdiction to hear Petitioner's claim under 8 U.S.C. § 1252(a)(5), (b)(9), and (g) because this Petition challenges the

decision of the Government to execute Petitioner's final order of removal. (Dkt. No. 23 at 2–3). Further, Respondents assert that, even if the Court does have jurisdiction, the March Guidance is fully consistent with due process. (*Id.* at 3). Second, Respondents argue that Petitioner's motion to reconsider the denial of her asylum application in immigration court does not stay Petitioner's removal. (Dkt. No. 23 at 2–8).

The Court held a hearing on Petitioner's Application for Preliminary Injunction on May 28, 2026. (Min. Entry May 28, 2026). The Court heard argument on the motion, and the parties filed supplemental briefing as ordered by the Court, (Dkt. Nos. 24, 25). The Court entered a temporary restraining order in favor of Petitioner on May 20, 2026, (Dkt. No. 19), and extended that order on June 3, 2026, (Dkt. No. 26).

## II. LEGAL STANDARDS

### A.    Preliminary Injunction

A court may issue a preliminary injunction only after notice is provided to the adverse party. Fed. R. Civ. P. 65(a). Preliminary injunctive relief is an extraordinary remedy intended to maintain the status quo pending a final resolution on the merits. *See Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971) (per curiam). There are four elements that must be met for the extraordinary relief of a TRO or preliminary injunction. A movant must demonstrate that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). The party seeking the injunctive relief must prove each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Miss. Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985). The third and fourth factors—harm to the opposing party and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

For preliminary injunctions, no one factor is necessarily given more weight than another, "[r]ather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting

*Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). "Injunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (citing 7 Moore's Federal Practice ¶ 65.04(s) (1982); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2942 at 368 (1973)).

### B.    28 U.S.C. Section 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005).

### B.  Third Country Removals

Withholding of removal under the INA prevents the Government from removing a noncitizen to a country where the individual is likely to face persecution. *See* 8 U.S.C. § 1231(b)(3). Similarly, protection under the Convention Against Torture (CAT) bars removal to a country where the noncitizen is more likely than not to be tortured. 8 C.F.R. § 1208.16. However, neither protection dissolves the underlying order of removal or forecloses removal to other countries. *See* Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681–822 (1998) (codified as Note to 8 U.S.C. § 1231); 8 C.F.R. §§ 208.16–18, 1208.16–18; 28 C.F.R. § 200.1.

In March 2025, Secretary of the Department of Homeland Security (DHS) Kristi Noem issued a memorandum entitled "Guidance Regarding Third Country Removals" (March Guidance). (Dkt. No. 23-1; Dkt. No. 1-5). The March Guidance outlines the Department of Homeland Security's internal procedures for effectuating removal to countries other than those identified in the underlying removal order for noncitizens subject to final orders of removal under Sections 240, 241(a)(5), or 238(b) of the INA who have received withholding of removal and/or CAT protection. (Dkt. No. 23-1 at 1). Under

the March Guidance, DHS's position is that it may remove a noncitizen to a third country if that country has provided diplomatic assurances that the individual will not face persecution or torture and the Department of State considers those assurances credible. (*Id.* at 1–2).

If the United States does not receive diplomatic assurances or does not find them to be credible, the March Guidance directs DHS to notify the noncitizen of the proposed third-country removal. (*Id.* at 2). If the noncitizen expresses a fear of removal to that country, U.S. Citizenship and Immigration Services (USCIS) must conduct a screening to determine whether the individual is eligible for withholding of removal or CAT protection with respect to the proposed country of removal. (*Id.*). If USCIS concludes the individual is not likely to face persecution or torture there, removal may proceed. (*Id.*). If USCIS determines otherwise, ICE may seek reopening of proceedings before the Immigration Court or the Board of Immigration Appeals (BIA) or alternatively designate a different country for removal. (*Id.*).

In July 2025, ICE issued an additional directive reaffirming that agency personnel must follow the March Guidance procedures. (Dkt. No. 1-6 at 2). Petitioner has also submitted evidence indicating that the Government has carried out removals to various third countries under these policies, including El Salvador, Panama, Costa Rica, Honduras, Ghana, South Sudan, Eswatini, Uzbekistan, and Mexico. (Dkt. No. 1 at 16; Dkt. No. 1-7). Petitioner further alleges that, despite diplomatic assurances provided to the United States, some third countries have subsequently removed individuals to the countries from which they originally obtained withholding of removal or CAT protection, which is also referred to as chain refoulement. (Dkt. No. 15-2 at 23; Dkt. No. 1 at 23).

### C. 8 U.S.C. Section 1231

The detention and removal of aliens that are subject to a final order of removal is governed by 8 U.S.C. § 1231. Under this statute, the Government is authorized to remove a noncitizen to certain designated countries, in accordance with articulated procedures, following entry of a final order of removal. *See* 8 U.S.C. § 1231(b). Where removal to a country is not possible, or the designated country refuses acceptance, the statute permits removal to alternative countries, including the country of citizenship, birth, where the noncitizen has residence, or another country willing to accept the noncitizen. *Id.* at

6 / 22

(b)(1)(C)(i)–(iv). However, the Government's authority to remove a noncitizen to a particular country is limited by a prohibition on removing a noncitizen to a country where the noncitizen's life or freedom would be threatened on account of a protected ground. *Id.* at (b)(3).

## II.  DISCUSSION

Having considered Petitioner's Application and the applicable law, the Court finds that a preliminary injunction is warranted. As discussed below, the Court concludes that it has jurisdiction, and the preliminary injunction factors weigh in Petitioner's favor. Specifically, the Court finds that Petitioner has demonstrated a likelihood of success on the merits of her due process claim, a substantial threat of irreparable harm absent injunctive relief, and that the balance of equities and public interest favor preserving the status quo pending further proceedings. Finally, given the circumstances of this case, the Court determines that waiver of the bond requirement under Rule 65(c) is appropriate.

### A.  Jurisdiction

To begin, the Court has jurisdiction to grant a preliminary injunction. Federal courts have an obligation to consider their subject-matter jurisdiction, and a court may not proceed where it is evident that it does not have jurisdiction. *See Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004). At the same time, federal courts have jurisdiction to determine their jurisdiction. *See Aranda Gomez v. Bondi*, 1:25-cv-258, Dkt. No. 6 (S.D. Tex. Feb. 4, 2026) (citing *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978)).

Respondents argue that 8 U.S.C. § 1252(a)(5), (b)(9), and (g) divest this Court of jurisdiction because Petitioner's claims arise from ICE's execution of a final order of removal. (Dkt. No. 23 at 2–3). Further, Respondents argue that the injunctive relief Petitioner seeks directly challenges Respondents' existing guidelines and statutory authority to effectuate such removal. (*Id.* at 3–7). The Court addresses each argument..

#### 1.  8 U.S.C. § 1252(g)

First, the Court determines that Section 1252(g) does not strip the Court of jurisdiction over Petitioner's claims. Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause . . . arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders . . . ." However, district courts

have distinguished between challenges to a discretionary decision to execute a removal order—which are barred under 8 U.S.C. § 1252(g)—and challenges to the manner in which the removal order is executed, which other district courts have found are not barred. *See Mbaba v. Perez*, No. 5:26-CV-00070, Dkt. No. 23 at 9 (S.D. Tex. Feb. 13, 2026); *see also Guerra v. Blanche*, No. 2:26-CV-498, 2026 WL 949027 (D. Nev. Apr. 7, 2026); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d, 137, 152 (W.D.N.Y. May 2, 2025) (citing *Torres-Jurado v. Biden*, 2023 WL 7130898, at *2 (S.D.N.Y. Oct. 29, 2023) (collecting cases)).

The Supreme Court has held that Section 1252(g) "applies to three discrete actions that the Attorney General may take: her 'decision or action' to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 943 (1999) (emphasis in original). In *AADC*, the Supreme Court reasoned that there are many other decisions outside those three categories that may be part of the deportation process, such as the decisions to open an investigation, to surveil the suspected violator, and the decision to reschedule the deportation hearing, among others. *See id.* Instead of reading Section 1252(g) as "sweep[ing] in any claim that can be technically said to 'arise from' the three listed actions," Section 1252(g) should be read to refer to only those three specific actions themselves. *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Further, the Supreme Court has characterized Section 1252(g) as a "discretion-protecting provision" that is "specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *AADC*, 525 U.S. at 487.

Here, as the Court has recognized, Petitioner does not seek review of the discretionary decision to execute her removal order. (Dkt. No. 15-2 at 20). Instead, she seeks review of the process to which she is entitled under the Due Process Clause of the Fifth Amendment before she can be removed to a third country. (*Id.*). Petitioner's arguments do not challenge Respondents' discretionary authority to decide "when" or "whether" to execute a removal order. Instead, Petitioner challenges Respondents' authority to remove her to a third country without due process. *See, e.g.*, *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025). No third country was designated for removal during her removal proceedings, and therefore no third country removal was incorporated into her removal order. As such, Petitioner's challenge to the post-removal-order designation of a third country cannot constitute a challenge to the execution of the

removal order. Accordingly, the Court concludes that its jurisdiction is not foreclosed by Section 1252(g). *See, e.g.*, *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1005 (S.D. Tex. 2025) ("This is not a challenge to the Government's discretionary choice of 'whether and when' to remove [Petitioner]. Essentially, [Petitioner] 'do[es] not seek a review of a decision that could invalidate [her] removal order[].' So [Section] 1252(g) cannot bar the Court's review.") (citation modified).

Respondents' arguments do not change this conclusion. (*See* Dkt. No. 23 at 2–3). Respondents cite several authorities in support of their argument. (*Id.* at 5–7). The cases are distinguishable because each case involved either a direct challenge to the execution of an existing removal order or an attempt to delay removal while pursuing collateral immigration relief. For instance, in *Rauda v. Jennings*, the petitioner sought a stay of removal while he filed a motion to reconsider the substance of his underlying removal order. 55 F.4th 773, 776 (9th Cir. 2022). In *Tazu v. Attorney General of the United States*, the petitioner sought to delay removal while his waiver application was pending. 975 F.3d 292, 294–96 (3d Cir. 2020). Similarly, in *Camarena v. Director, Immigration and Customs Enforcement*, petitioners sought to halt removal while pursuing provisional unlawful presence waivers. 988 F.3d 1268, 1270–73 (11th Cir. 2021). In each case, the court concluded that the petitioner's claims directly challenged the Government's execution of a valid removal order and therefore fell within Section 1252(g)'s jurisdictional bar. *See Rauda*, 55 F.4th at 776–778; *Tazu*, 975 F.3d at 298–99; *Camarena*, 988 F.3d at 1273.

The same is true of *Hamama v. Adducci,* 912 F.3d 869 (6th Cir. 2018). There, a class of noncitizens from Iraq challenged their detention pending execution of their removal orders from decades earlier. *Id.* at 872. Likewise, in *Silva v. United States*, the plaintiff brought a Federal Tort Claims Act claim against the Government after he was mistakenly removed to Mexico despite a stay of his removal. 866 F.3d 938, 939 (8th Cir. 2017). In each instance, the courts found petitioners' claims directly implicated the Government's execution of an existing removal order to the country designated in the removal order. *See Hamama,* 912 F.3d at 880; *Silva*, 866 F.3d at 942. This key factual distinction in each case undermines their applicability.

The Court is also aware of an unreported Fifth Circuit case addressing the propriety of a stay of removal, *Imran v. Harper,* No. 25-30370, 2026 WL 93131 (5th Cir. Jan. 13, 2026). There, a noncitizen challenged his prolonged detention by requesting release from custody and seeking to halt his imminent removal. *Id.* at \*1. Petitioner sought a TRO to preserve the status quo while the court could address his habeas petition. *Id.* The district court found that it did not have jurisdiction and transferred the case to the Fifth Circuit. *Id.*

The Fifth Circuit found that this motion for a TRO was a request for a stay of removal that directly challenged a removal order. (*Id.*). The court recognized that federal courts lack jurisdiction over "claims connected directly and immediately with a 'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders.'" *Humphries v. Various Fed. U.S. INS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999).[4]

By contrast, Petitioner here does not challenge the validity of her removal order or Respondents' authority to execute that order. (*See* Dkt. No. 15-2 at 20). Instead, Petitioner asserts a constitutional due process challenge the adequacy of the procedures she has been afforded, post-final order of removal, before Respondents remove her to Cameroon or another undesignated third country. (*Id.* at 21). This distinction has been recognized by the Ninth Circuit in *Ibarra Perez v. United States*, where the court explained that a challenge to removal to a country not identified in the original removal order was not a challenge to the "execution" of the removal order itself. 154 F.4th at 997.

---

[4] In *Humphries*, the Fifth Circuit evaluated the extremes of claims "arising from" as used in Section 1252(g). The court explained that the phrase "arising from" in Section 1252(g) should not be interpreted at its extremes but instead understood along a spectrum of connection to the Government's immigration actions. *Id.* at 943–44. On one end are claims with only a weak, remote, or attenuated relationship to the Attorney General's decisions to commence proceedings, adjudicate cases, or execute removal orders; those claims do not "arise from" the covered actions. *Id.* at 943. On the other end are claims that are directly and immediately connected to those specific immigration actions; those claims do "arise from" the covered actions and fall within Section 1252(g)'s jurisdictional bar. *Id.* Thus, the court framed the inquiry as whether there is a direct nexus between the challenged claim and the Government's decision or action to commence proceedings, adjudicate cases, or execute removal orders, as opposed to merely a tangential or indirect relationship. *Id.*

The petitioner in *Humphries* brought a claim for "retaliatory exclusion," seeking a review of the Immigration and Naturalization Service's (INS) decision to begin removal proceedings for what he thought was a response to being vocal about his disagreement with his government employer. *Id.* at 939. The court found the district court did not have jurisdiction under Section 1252(g) because "the Attorney General's decision to place Humphries in exclusion proceedings appears to provide the most direct, immediate, and recognizable cause of Humphries' injury." *Id.* at 945.

The court in *Ibarra* reasoned that because the proposed country "was not mentioned in the order of removal," the petitioner was not challenging the execution of the removal order within the meaning of Section 1252(g). *Id.* The court finds this reasoning persuasive. Like the petitioner in *Ibarra Perez*, Petitioner's removal order only ordered her removed to Sudan, and did not identify Cameroon, or any other third country for removal. (*See* Dkt. No. 1-1 at 4). As such, Petitioner's challenge here is not a challenge to the execution of her removal order, but a challenge to the constitutionality of the procedures in identifying her proposed third country of removal. These claims are not precluded by Section 1252(g).

### 2. 8 U.S.C. § 1252 (a)(5), (b)(9)

Next, Section 1252(a)(5) and (b)(9) do not deprive the Court of jurisdiction. These statutory provisions limit judicial review of final orders of removal to the court of appeals. *See* 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal . . . under any provision of this chapter."); 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section.").

Here, Petitioner does not challenge the validity of, or seek review of, her underlying order of removal, the determination of her removability, or Respondents' authority to seek removal. Instead, Petitioner brings claims concerning the notice and opportunity to raise a fear-based claim before removal to a third country *after* her removal proceedings ended. (Dkt. No. 15-2 at 20) (emphasis added). The Supreme Court has held that where a Petitioner is "not asking for review of an order of removal, . . . challenging the decision to detain them in the first place or to seek removal," or "challenging any part of the process by which their removability will be determined," Section 1252(b)(9) is not a jurisdictional bar. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019); *see also Duarte v. Mayorkas*, 27 F.4th 1044, 1055–57 (5th Cir. 2022) ("The distinction between an independent claim and one that is 'inextricably linked' to a removal or deportation order 'will turn on the substance of the relief that a [Petitioner] is seeking.").

11 / 22

Applying that reasoning here, the Court concludes that Petitioner's claims fall outside these jurisdiction-stripping provisions of Section 1252.

### 3.  The Court May Consider Petitioner's Claims in Habeas Corpus

Finally, the Court finds that Petitioner has properly pursued the requested relief through a petition for writ of habeas corpus. The Court recognizes that a recent decision in this division addressing third country removals proceeded as a mandamus action. *See Mbaba v. Perez*, 5:26-CV-00070, Dkt. No. 1 (S.D. Tex. Feb. 13, 2026). However, noncitizen detainees may seek and obtain injunctive relief related to transfer and removal through habeas proceedings. *See Trump v. J.G.G.*, 604 U.S. 670, 671–72 (2025) (collecting cases) ("Regardless of whether the detainees formally request release from confinement, because their claims for relief 'necessarily imply the invalidity' of their confinement and removal . . . their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas.").

Petitioner's requested injunctive relief here falls within that "core." A noncitizen detained pending removal is considered "in custody" for purposes of habeas jurisdiction. *See Zadvydas*, 533 U.S. at 699. As recently confirmed by the Supreme Court, when the Government seeks to effectuate removal in a manner alleged to violate constitutional or statutory protections, habeas provides a vehicle through which the petitioner may challenge the legality of the proposed removal and the conditions under which detention will terminate. *See J.G.G.,* 604 U.S. at 672 ("Challenges to removal under the [Alien Enemies Act (AEA)] . . . must be brought in habeas.").

Here, Petitioner contends that Respondents seek to remove her to a country that was never designated during her removal proceedings and for which she has never been afforded a meaningful opportunity to present fear-based claims before an Immigration Judge. (Dkt. No. 15-2 at 22–26). Petitioner's challenge to the process she's receiving is inherently tied to her detention because she is detained for the purpose of third country removal. *See J.G.G.,* 604 U.S. at 672 ("[B]ecause their claims for relief 'necessarily imply the invalidity' of their confinement and removal under the AEA, their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas.") (citation modified); *see also A.A.M. v. Andrews*, 815 F.Supp.3d 1124, 1129 (E.D. Cal. 2025). Therefore, Petitioner's claims have been properly brought in habeas.

### B. The Preliminary Injunction Factors Weigh in Favor of Petitioner

Upon review of Petitioner's claims, the Court finds that all the factors weigh in favor of granting the application for a preliminary injunction. The Court addresses each factor in turn.

#### 1. Substantial Likelihood of Success on the Merits

First, Petitioner has demonstrated a substantial likelihood of success on the merits of her due process claim under the Fifth Amendment. Petitioner's claim is factually similar to the claims presented in *Sagastizado* and *Mbaba*, where the district court concluded that removing a noncitizen to a third country without providing a meaningful opportunity to raise a fear-based claim violated due process. 802 F. Supp. 3d 992 at 1008–13; *Mbaba*, 5:26-CV-00070, Dkt. No. 23 at 13 (S.D. Tex. Jan. 18, 2026). The Court finds these cases persuasive in analyzing Petitioner's claims. In reaching its conclusion on this factor, the Court considers the constitutional protections afforded to noncitizens in removal proceedings, the statutory framework governing withholding of removal and CAT protection, the adequacy of the procedures set forth in the March Guidance, and whether due process requires additional safeguards before Petitioner may be removed to a third country. As such, the Court turns to evaluate whether the procedures currently afforded to Petitioner satisfy due process.

Petitioner argues that due process requires that she receive adequate notice identifying any proposed third country of removal and a meaningful opportunity to reopen her immigration proceedings to pursue fear-based relief before an Immigration Judge. (Dkt. No. 15-2 at 23). As a threshold matter, the Court recognizes that due process protections extend to all "'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." *Zadvydas*, 533 U.S. 678, 693 (2001) (collecting cases). Further, the Supreme Court has held that under the Fifth Amendment, noncitizens are entitled to due process of law in the context of removal proceedings. *See Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993). As stated in *J.G.G.*, "detainees are entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *See id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). Here, as explained below, the Court finds that the nature of this case requires adequate notice and an opportunity to

be heard on a fear-based claim at an individualized hearing in immigration court as contemplated in Section 1231(b)(3). Having determined that Petitioner is entitled to due process, the Court considers the question of whether the procedures in the March Guidance sufficiently satisfy the due process that this case requires. Petitioner seeks an opportunity to assert a fear-based claim as to Cameroon, a country to which Respondents intend to remove Petitioner. (*See* Dkt. No. 16). Petitioner contends that due process entitles her to reopening her proceedings in immigration court so that she may present those claims before an Immigration Judge in an evidentiary hearing. (Dkt. No. 15-2 at 21–22).

Under the INA, Respondents may remove a noncitizen granted withholding of removal or CAT protection to an alternative third country that will accept the noncitizen by following the statutory framework governing designation of alternative countries of removal. *See* 8 U.S.C. § 1231(b)(2)(E)(i)–(vii). However, the INA expressly prohibits removal to a country where the noncitizen's life or freedom would be threatened on account of a protected characteristic or where the individual would likely face torture. *See* 8 U.S.C. § 1231(b)(3); *see also* 8 U.S.C. § 1231 note (1998) (United States Policy with Respect to Involuntary Return of Persons in Danger of Subjection to Torture).

Given that certain protections under withholding of removal and CAT are mandatory rather than discretionary forms of relief, other district courts have recognized that due process requires meaningful notice and a genuine opportunity to pursue fear-based claims before removal to a third country may occur. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 728–29 (W.D. Wash. 2025); *Sagastizado,* 802 F. Supp. 3d 992; *Mbaba*, 5:26-CV-00070, slip op. at 15, slip op. at *4; *Guerra*, 2026 WL 949027.

Respondents argue that the procedures for removal in the March Guidance are fully consistent with due process. (Dkt. No. 23 at 3). Namely, Respondents contend that diplomatic assurances providing that noncitizens removed from the United States will not be subjected to torture or persecution satisfy due process. (*Id.* at 3–4). In this case, Respondents assert that there are diplomatic assurances from Cameroon that noncitizens removed to Cameroon will not be persecuted or tortured there, which the Department of State determined to be credible on January 7, 2026. (Dkt. No. 23 at 4).

These assurances are made generally with respect to all people removed to Cameroon, not to Petitioner specifically.

The Court is unpersuaded by Respondents' argument. Due process "calls for procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The plain language of the statute governing withholding of removal contemplates a fact-intensive evidentiary basis for determining fear or threats to life or freedom. 8 U.S.C. § 1231(b)(3)(C). Although the INA does not proscribe detailed procedures for third country removals, it does require generally that if "the alien's life or freedom would be threatened . . . the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make [a] credibility determination[]. . . ." *Id.* The burden of proof is on the noncitizen to establish that that a characteristic such as "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). The process for determining credibility includes consideration of the alien's testimony weighed against other evidence of record. *See* 8 U.S.C. § 1158(b)(1)(B)(i)-(ii). Considering the totality of the circumstances and all relevant factors, a trier of fact determines whether the alien has met the burden of proof. *Id.* at (b)(1)(B)(iii).

Though this authority has been delegated to the Attorney General by statute, findings of fact are made by Immigration Judges (IJs) in Immigration Court. *See Garland v. Ming Dai*, 593 U.S. 357, 373 (2021) ("[T]he IJ—makes findings of fact, including determinations as to the credibility of particular witness testimony."). This framework provides noncitizens with an opportunity to present fear-based claims before an IJ through an evidentiary hearing. *See* 8 U.S.C. § 1229a; *Guzman Chavez*, 594 U.S. at 540–41; *see also* 8 CFR §§ 208.18, 30–31, 1208.18, 31 (permitting noncitizens to pursue CAT protection even when they are subject to an existing removal order or the applicability of expedited removal procedure).

By contrast, the March Guidance contemplates two abbreviated procedures to remove a noncitizen to a third country. (Dkt. No 23-1 at 1–2). First, where the Department of State has received diplomatic assurances—as in this case—from a proposed third country that noncitizens removed from the United States will not be

persecuted or tortured, removal can take place *without any additional process*. (*Id.* at 1). Second, where there aren't such assurances, the noncitizen bears the burden of affirmatively expressing fear of removal to an immigration officer to trigger additional protection. (*Id.* at 2). If the noncitizen can state such a fear to the immigration officer, then they will receive a USCIS screening interview within twenty-four hours, (*id.*), but they are not provided with an opportunity to request review of that screening before an IJ as they would in other fear-screening processes. *See Sagastizado,* 802 F. Supp. 3d at 1009 (referring to the federal regulations and noting "there are no regulations that provide for a circumstance under which USCIS is given the authority to conduct fear-screening interviews without providing for independent review of that screening by an [Immigration Judge]").

Here, the Court finds that diplomatic assurances do not provide a meaningful opportunity to raise a fear-based claim. Relying only on generalized diplomatic assurances cannot substitute an individualized, fact-based determination of whether Petitioner will face persecution, torture, or potential chain refoulement if removed to Cameroon.[5] *See Mbaba*, 5:26-CV-00070, Dkt. No. 23 at 18 ("Reliance on such blanket assurances as a substitution for notice and the opportunity to be heard cannot comport with basic due process."). Here, affording Petitioner due process before removal to a third country would require Respondents to address whether Petitioner faces possible torture or persecution in Cameroon. This includes an inquiry into whether removal to Cameroon would result in chain refoulement to her native country of Sudan. Providing Petitioner with an opportunity to present such claims would satisfy the individualized assessment contemplated by the withholding of removal and CAT protection statutes. *See* 8 C.F.R. § 1208.16–18.

The Court also rejects Respondents' argument that diplomatic assurances under the March Guidance satisfy Section 1231(b) and constitutional due process. As discussed above, Section 1231(b) expressly contemplates fact-finding by a "trier of fact" which includes credibility determinations and meeting a burden of proof. *See* 8 U.S.C.

---

[5] Petitioner has submitted evidence indicating that certain countries that have given diplomatic assurances for third-country removals have subsequently removed deportees to their countries of origin. (*See* Dkt. No. 15-2 at 33–34).

§ 1231(b)(3)(C). The March Guidance provides neither. Respondents' interpretation that Section 1231(b)(3)(C) does not provide for an evidentiary hearing in third country removal cases belies plain language of the statute. As previously noted, Section 1231(b)(3)(C) provides that a "trier of fact" will determine whether the alien has sustained their "burden of proof," including making "a credibility determination." Section 1231(b)(3)(C) is rendered superfluous if the Executive attempts to flout that process with blanket diplomatic assurances. In fact, the entire established framework for withholding of removal under the INA would be rendered superfluous under Respondents' theory that generalized assurances satisfy obligations under Section 1231(b)(3)(A). For these reasons, Petitioner is substantially likely to succeed on her claim that the procedures under the March Guidance are insufficient under the statute and constitutional due process.

Given that Petitioner's claims stem from an alleged lack of due process, the Court evaluates the adequacy of the procedures under the procedural due process balancing framework in *Mathews v. Eldrige*, 424 U.S. 319 (1976). Under *Mathews*, courts consider: (1) the private interest that will be affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards. *Id.* at 335.

Applying *Mathews*, the Court concludes that Petitioner is substantially likely to succeed on her claim that she is entitled to the procedures she seeks. First, Petitioner's private interests are exceptionally weighty, as she faces possible removal to a third country that could refoul her to Sudan where it has been established that she may face persecution or torture.

Second, there is substantial risk of erroneous deprivation if generalized diplomatic assurances are allowed to replace an evidentiary hearing and independent adjudication before an IJ. *See Sagastizado*, 802 F. Supp. 3d at 1011–13 (applying the *Mathews* balancing framework to assess Petitioner's due process interests and concluding that the procedures provided under the March Guidance are constitutionally inadequate); *see also Mbaba*, 5:26-CV-00070, Dkt. No. 23 at 19 (collecting cases where full evidentiary

hearings were required before depriving an individual of their liberty or liberty interests). Here, an additional procedural safeguard would have a high probable value because, without an evidentiary hearing, Petitioner could face a risk of persecution, torture, or chain refoulement from the proposed third country in violation of Section 1231(b)(3).

Third, this procedure would be minimally burdensome on Respondents because the INA already sets out a process in which Petitioner may seek withholding of removal and/or CAT protection. *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 430–31 (1987). Since the INA already sets out procedures for withholding of removal and CAT protection, requiring Respondents to follow the same procedures for third country removals would impose a minimal additional administrative burden while simultaneously substantially reducing the risk of removal without due process.  As such, the Court agrees that an alien's right to request an evidentiary hearing in which a neutral adjudicator can consider both the objective evidence of the risk of future persecution and torture in addition to a petitioner's subjective fear is required.

Respondents contend that the Court should deny Petitioner's injunctive relief because the Supreme Court has indicated that Respondents are likely to succeed on the merits of the legality of third-country removals by staying the injunction entered by the District Court of Massachusetts pending appeal in the U.S. Court of Appeals for the First Circuit in *D.V.D. v. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025). (Dkt. No. 25 at 7). The Court notes that the relief Petitioners seek in this case is similar to the relief provided in *D.V.D.*[6] However, as a question of authoritative precedent, the Supreme Court's decision to stay the district court's injunction in *D.V.D.* does not provide any indication of Respondents' potential for success on the merits. As another court in this district has held, "because *D.V.D.* does not state the basis for its ruling, there is no 'holding' that controls this court's analysis." *See Ajcac Guachiac v. Bondi*, No. 4:26-cv-00383, Dkt. No. 33, at 5 (S.D. Tex. Mar. 3, 2026). By virtue of its emergency nature, an emergency stay order is not a decision on the merits. The purpose of an emergency stay

---

[6] In *D.V.D.*, Plaintiffs sought injunctive relief to "(1) to prevent Defendants from removing . . . the named Plaintiffs to a 'third' country without notice and an opportunity to assert fear of persecution or torture; (2) to prevent Defendants from removing any class member to a 'third' country without notice and an opportunity to assert fear of torture; and (3) an order directing Defendants to facilitate the immediate return of [a class member] to the United States." *D.V.D*, 778 F. Supp. 3d at 370.

is to "hold the matter under review in abeyance because the appellate court lacks sufficient time to decide the merits." *Nken*, 556 U.S. at 432. Moreover, the Supreme Court's decision staying the preliminary injunction is only binding on the district court in that case. As such, the Supreme Court's emergency order to stay the injunction pending appeal does not divest this Court of its independent obligation to evaluate Petitioner's constitutional claims and entitlement to injunctive relief.

In sum, Petitioner is substantially likely to succeed on the merits of her claim that her removal to Cameroon, or another third country, without adequate notice and an opportunity to present a fear-based claim would violate her Fifth Amendment due process rights.

### 2. Petitioner Will Suffer Irreparable Harm

The irreparable harm factor weighs in favor of granting a preliminary injunction. In general, "the burden of removal alone cannot constitute the requisite irreparable injury," *Nken*, 556 U.S. at 435. However, other district courts have held that removal to a country in which an individual faces persecution or torture constitutes irreparable harm. *See Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005) (finding that petitioners demonstrated likelihood of irreparable harm, in part because of potential persecution if they were deported); *Misirbekov v. Venegas*, 793 F. Supp. 3d 892, 895 (S.D. Tex. 2025) (finding irreparable harm where the petitioner was denied due process and faced possible refoulement through removal to a third country despite having withholding of removal relief); *see also Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury.").

Here, Petitioner alleges harm beyond removal. Petitioner asserts that she faces possible removal to Cameroon, even though Cameroon was not designated as an alternative country of removal during her removal proceedings. (Dkt. No. 18 at 4). Specifically, Petitioner asserts that there is a high risk of chain refoulement following her removal to a third country, particularly if she is removed to Cameroon. (Dkt. No. 15-2 at 23). Petitioner attached evidence that individuals removed to Cameroon through the third-country removal process have reported refoulment to their home countries. (Dkt. No. 15-2 at 24 (citing Pranav Baskar & Hamed Aleaziz, U.S. Deports Nine Migrants in

19 / 22

Secret, Ignoring Legal Protections, N.Y. TIMES (Feb. 16, 2026), https://www.ny times.com/2026/02/14/world/africa/ussecret-deportationcameroon.html?smid=nytcore-io s-share)). As such, there is an imminent risk that if Petitioner is removed to Cameroon, she could be refouled to Sudan, where she fled after being kidnapped and tortured by the Sudanese Armed Forces based on its belief that she supported the Rapid Support Forces. (Dkt. No. 15-2 at 25–26). Given this reality, the Court finds that Petitioner has sufficiently demonstrated irreparable harm beyond removal itself.

3.    *The Balance of Equities and Public Interests Weigh in Favor of Petitioner*

Finally, the balance of equities and the public interest weigh in Petitioner's favor. Since the Government is the non-movant, these factors merge. *See Nken*, 556 U.S. at 435. Petitioner's interest in receiving constitutionally adequate procedures before being removed to a country where she may face persecution or torture, including through potential refoulement, outweighs any administrative burden imposed on Respondents. *See Nunez*, 537 F. Supp. at 587 (holding that protecting individuals from persecution goes "to the very heart of the principles and moral precepts upon which this country and its Constitution were founded"). Moreover, the Government can't make a cognizable claim of harm from an injunction when it perpetuates an action that violates statutory or constitutional protections. *See State v. Biden*, 10 F. 4th 538, 560 (5th Cir. 2021) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is generally no public interest in the perpetuation of unlawful agency action"); *see also Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022).

As discussed above, the relief Petitioner seeks is simply for Respondents to provide her an opportunity to assert a fear-based claim of removal through the reopening of her removal proceedings before an IJ. (*See* Dkt. 15-2 at 28). Any burden imposed on Respondents or any delay to the lawful execution of Petitioner's removal order is comparatively minimal to the potential for harm that Petitioner faces—harm through the deprivation of her due process rights, the possibility of removal to a country where she may face persecution or torture, and the risk of refoulement to Sudan where an IJ has already determined that she is more likely than not to face persecution or torture.

Finally, the Court acknowledges Petitioner's representation that she has filed a motion in Immigration Court to reconsider her denial of asylum relief, and her recent

20 / 22

update that the motion was denied. (*Id.* at 12; Dkt. No. 27). However, the Court lacks jurisdiction to consider the status of Petitioner's proceedings in Immigration Court, and it will not factor that information into its ruling on the request for a preliminary injunction.

Instead, the Court's ruling rests on Petitioner's substantial likelihood of success on her due process claim. Specifically, the Court finds that Petitioner is substantially likely to succeed on her claim that removal to a third country without adequate notice and a meaningful opportunity to raise fear-based claims before an IJ violates her due process rights.[7] Therefore, the Court concludes that granting injunctive relief to enjoin Respondents from removing Petitioner pending such procedures serves the public interest.

### 4.  The Requirement for Bond is Waived

The Court maintains the terms set forth with the current temporary restraining order and exercises its discretion to waive the requirement to post a bond under Rule 65(c). Although Rule 65(c) generally requires a party seeking injunctive relief to provide security to cover the costs and damages that may result from a wrongful injunction, the Rule leaves the amount of such security to the discretion of the district court. *See* Fed. R. Civ. P. 65(c). The Fifth Circuit has recognized that this discretion includes the authority to require no bond at all. *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978) (per curiam) (citations omitted); *see also Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (affirming *Corrigan Dispatch*).

### IV. CONCLUSION

For the foregoing reasons, Petitioner's Emergency Application for a Temporary Restraining Order and Preliminary Injunction, (Dkt. No. 15), is **GRANTED**.

Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are hereby

---

[7] Presumably in an attempt to avoid barriers she will face in filing the motion to reopen, Petitioner requests the Court order Respondents to move to reopen her proceedings in Immigration Court. The Court will not require Respondents to specifically pursue this procedure, but the Court notes that Petitioner's requested relief would satisfy due process and the Court's Order.

**ENJOINED AND RESTRAINED** from transferring Petitioner outside of this judicial district or removing her from the United States to any third country, unless and until:

1. Respondents provide Petitioner with at least ten (10) days' notice of the proposed country of removal, and

2. Petitioner receives an individualized evidentiary hearing before an Immigration Judge as contemplated in 8 USC 1231(b)(3)(C).

This preliminary injunction shall remain in effect until the earlier of: (1) an order from this Court modifying this Order, or (2) the entry of a final dispositive order in this case. The Court recognizes that the law on the issues addressed in this Order is developing rapidly. *See, e.g.*, *Sosnava Rodriguez v. Ortega,* No. 26-50183 (5th Cir. 2026); *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-1393, 2026 WL 1102937 (1st Cir. Feb. 20, 2026). The Court may reconsider this Order based on new legal developments.

It is so **ORDERED**.

**SIGNED** on June 12, 2026.

_____
John A. Kazen
United States District Judge